[Civ. No. 49172. First Dist., Div. Two. Jan. 31, 1983.]

EILEEN LaBELLE, Plaintiff and Appellant, v.
SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

Reynold H. Colvin, Robert D. Links and Colvin, Martin & Links for Plaintiff and Appellant.

Keith V. Breon, Louis T. Lozano and Breon, Galgani & Godino for Defendants and Respondents.

OPINION

**ROUSE, Acting P. J.**—Plaintiff, Eileen LaBelle, appeals from a judgment in favor of defendants, San Francisco Unified School District (District), the superintendent of schools and the board of education of the school district, and the individual members of the board of education.

Plaintiff brought this action to obtain declaratory relief, mandamus and damages against defendants based upon their allegedly wrongful conduct in demoting her from the position of elementary school principal to that of classroom teacher without proper justification and without affording her a hearing.

There is no dispute as to the facts. In 1955, plaintiff was initially employed by defendant school district as an elementary schoolteacher. In 1966, after she had completed 10 years as an elementary schoolteacher, she was appointed to the position of elementary school assistant principal. Eight years later, in 1974, she was appointed to the position of elementary school principal under a four-year renewable contract.

Plaintiff's contract as principal was subject to renewal on August 27, 1978. However, on March 1, 1978, District wrote to her and advised her that it was being recommended to defendant board of education that her contract as principal not be renewed after August 27, 1978, and that she be reassigned to the position of classroom teacher. District also advised her that if she was in fact reassigned to classroom teaching, she was entitled to request a written statement of the reasons for such reassignment.

On March 6, 1978, plaintiff wrote to District and requested a hearing and a statement of the reasons for her reassignment. District replied by letter of March 10, 1978, advising her that "due to the anticipated financial condition of the district, it was necessary for the Superintendent to recommend a reduction of administrative staff . . . ." and that it had therefore been decided that her contract would be recommended for nonrenewal. No mention was made in this letter of her request for a hearing.

On May 12, 1978, plaintiff was officially notified that, pursuant to a resolution adopted by defendant board of education on May 10, 1978, her contract as principal would not renewed on August 27, 1978, and she would be reassigned to the position of elementary schoolteacher for the ensuing school year. She was again advised that she could request a written statement of the reasons for her reassignment.

In July 1978, plaintiff commenced this action, claiming that under section 5.101 of the Charter of the City and County of San Francisco (hereafter Charter

section 5.101) she was entitled to have her four-year contract as an elementary school principal renewed unless an administrative hearing was held and it was determined at such hearing that she had not achieved and maintained adequate standards of performance during the four years preceding the hearing. Plaintiff alleged that she had maintained such standards, but that defendants had refused to renew her contract for arbitrary and capricious reasons and without affording her a hearing of any kind.

In response, defendants denied that there was anything improper in plaintiff's reassignment to the position of classroom teacher. Defendants also affirmatively alleged that the San Francisco charter provision upon which plaintiff relied was in conflict with and preempted by section 44850.1 of the Education Code, which provided that certificated individuals employed by school districts in administrative or supervisory positions could only acquire or retain permanent status in such positions by complying with the provisions of the Education Code.

The case went to trial before the court, sitting without a jury. On three occasions during the trial, the court excluded, as irrelevant, certain testimony proffered by plaintiff. On the first such occasion, she sought to introduce evidence that she had a good record as an elementary school principal. The trial court ruled that the adequacy of her performance as a principal was not in issue, since defendants had never, at any time, claimed that their refusal to renew her contract was based upon the inadequacy of her performance as a principal. The court accordingly excluded the proffered testimony as irrelevant.

At a later time during the trial, plaintiff made an offer of proof in support of her claim that defendants had acted arbitrarily and capriciously in reassigning her to the position of classroom teacher. Her counsel sought to introduce testimony by a witness who was charged with the duty of evaluating plaintiff's performance as a principal. Plaintiff's counsel represented to the trial court that this witness would testify that, based upon his evaluation of plaintiff's performance, he had recommended that her contract as principal be renewed, but that a member of defendant board of education had then improperly interfered and had told the witness that "he would do anything possible to see that [plaintiff] was not reviewed . . . ." The trial court excluded this evidence as irrelevant, noting, again, that defendants were not claiming that the adequacy of plaintiff's performance was in issue but were taking the position that they were not required to conduct a hearing of any kind before deciding not to renew her contract as principal.

Finally, plaintiff's counsel provided the trial court with a detailed, written offer of proof. This document explained in greater detail the evidence which the trial court had already ruled irrelevant and inadmissible. In addition, plaintiff's

written offer of proof stated that, in refutation of defendants' claim that the nonrenewal of her contract was due to the poor financial condition of defendant school district, plaintiff wished to offer evidence that (1) she was the first employee of defendant school district whose contract was not renewed despite the adequacy of her job performance; (2) when defendant school district declined to renew her contract, it renewed the contracts of at least six other employees and declined to renew the contracts of three other employees; and (3) when defendant school district declined to renew plaintiff's contract, it promoted at least three other individuals to the position of principal and promoted four other individuals to the position of acting principal.

The trial court rejected plaintiff's offer of proof, apparently on the ground that the proffered evidence was irrelevant, although the court failed to state the precise ground for its ruling.

At the conclusion of the trial, the court found that plaintiff's transfer to the position of classroom teacher was based upon an assessment by defendant superintendent of schools and defendant board of education "of the needs of the District in light of a reduced number of available administrative positions because of the closing of approximately thirty elementary schools as well as the projected drastic reductions in the financial resources of the District for 1979-80." The court further found that defendant board of education's decision not to renew plaintiff's contract as principal was made at an executive session which was held on May 8 and 9, 1978, and which was reported in the official minutes of defendant board of education.

The trial court concluded, as a matter of law, that defendants had complied with all the applicable requirements of the Education Code in effecting plaintiff's transfer to the position of classroom teacher; that plaintiff had no property right, no right to tenure and no expectancy of continued employment as an elementary school principal; that plaintiff had tenure only as a classroom teacher; that Charter section 5.101 was preempted by conflicting provisions of the Education Code; that plaintiff had no right to a hearing as a prerequisite to her transfer to the position of classroom teacher; that based upon the totality of the circumstances, defendants' decision to transfer plaintiff to the position of classroom teacher was reasonable and neither arbitrary nor capricious; that plaintiff's sole remedy for a failure by defendants to provide an adequate statement of their reasons for reassigning plaintiff to the position of classroom teacher was a new and accurate statement of the reasons supporting such reassignment.

Judgment was accordingly rendered in defendants' favor, and plaintiff has appealed.

The issues on appeal are narrowly drawn and primarily turn upon the interaction between Charter section 5.101 and sections 44850.1, 44895 and 44894, subdivision (b), of the Education Code.

Charter section 5.101 provides, in pertinent part, that "All heads of departments, vice-principals, principals, supervisors and directors who are appointed prior to July 1, 1971 shall be classified as permanent employees in their respective positions after they have been successfully employed in such positions in the school department for a probationary period of three years. . . . All heads of departments, vice principals, principals, supervisors and directors who are appointed on or after July 1, 1971 or who are otherwise determined not to be permanent employees shall be employed pursuant to four year contracts with the board of education which contracts shall be subject to renewal based upon achieving and maintaining standards of performance, which standards of performance shall be governed by rules and regulations as promulgated by the board of education."

Section 44850.1 of the Education Code, provides, in pertinent part, that "on and after July 1, 1978, the certificated employees of any school district . . . who serve . . . in an administrative or supervisory position shall neither acquire nor retain permanent status in such position unless the employee is or becomes eligible for permanent status in accordance with provisions of this code."

Section 44895 of the Education Code provides, in pertinent part, that "A permanent employee . . . when advanced to an administrative or supervisory position requiring certification qualifications . . . shall retain his permanent classification as specified in Section 44894."

Section 44894, subdivision (b), of the Education Code provides, in pertinent part, that "If an employee is authorized to render service in more than one type of position for which certification qualifications are required, . . . he shall, upon satisfying all other requirements prescribed by law, acquire permanent status as follows: [¶] (1) If he is authorized to render service as a classroom teacher, he shall acquire permanent status as a classroom teacher."

In *Whisman* v. *San Francisco Unified Sch. Dist.* (1978) 86 Cal.App.3d 782 [150 Cal.Rptr. 548], the appellate court was called upon to determine whether the Education Code preempted that portion of Charter section 5.101 which granted permanent status to school district employees who had been appointed to administrative or supervisory positions prior to July 1, 1971, and who had held such positions for three years. The plaintiffs in *Whisman* met these requirements, but had nevertheless been reassigned by the San Francisco Unified School District to positions of lower grade and rank, purportedly due to a "reduction in services and not because [the plaintiffs] had failed to perform in a

satisfactory manner." (P. 788.) The plaintiffs then sought a writ of mandate compelling their reinstatement to their prior supervisory positions, and the trial court granted the writ, holding, inter alia, that the plaintiffs' reassignment violated Charter section 5.101 and the due process clauses of both the state and federal Constitutions. (P. 788.) On appeal by the defendant school district, the appellate court reversed the judgment in favor of the plaintiffs, holding that Charter section 5.101 was preempted by the Education Code and that the summary manner in which the plaintiffs' demotion had been effected was not a denial of due process.

In so holding, the appellate court pointed out that, since the school system was a matter of general concern rather than a municipal affair, it followed that the San Francisco Charter provision upon which the plaintiffs relied was subject to preemption by conflicting state laws and that no vested right could be acquired under the charter provision. (P. 789.) The court then directed its attention to the Education Code and noted that section 44850.1, which was added to the code in 1977, provided that on or after July 1, 1978, the certificated employees of any school district who served in administrative or supervisory positions could neither acquire *"nor retain"* permanent status in such position unless the employee in question was eligible for permanent status under the provisions of the Education Code. (P. 790.) The court concluded that the "provisions" referred to were sections 44894 and 44895 of the Education Code and that those statutes provided that a school district employee who had been appointed to an administrative or supervisory position, but who was also authorized to render service as a classroom teacher, could acquire or retain permanent status *only* in his capacity as a classroom teacher. (P. 790.) The *Whisman* court held that charter section 5.101 was clearly in conflict with the California statutes discussed, and that it was of no consequence that section 44850.1 was enacted after the enactment of charter section 5.101. The court concluded that, since charter section 5.101 was preempted by state legislation, plaintiffs did not have tenure as supervisors, but had tenure only as teachers. (P. 790.)

The *Whisman* court then discussed the plaintiffs' claim that they had been denied procedural due process because they had been reassigned to lower grade positions without a hearing. (Pp. 790-791.) The court concluded that the plaintiffs' right to a hearing was dependent upon whether they had a property interest in their administrative or supervisory positions. (Pp. 790-791.) The court held that the plaintiffs possessed no vested right to remain in their supervisory positions and could be reassigned subject only to the requirement of reasonableness and the additional requirement that the reassigned position was within the scope of the certificate under which tenure was acquired or the work assigned was of a rank and grade equivalent to the position in which tenure was acquired. (P. 791.) The court concluded that there was no showing that the

plaintiffs' reassignments were unreasonable, and rejected the plaintiffs' claim that the reassignments could be deemed unreasonable because the plaintiffs' supervisory positions had since been filled by other employees and there had therefore been no true reduction in services, as represented by the school district. (Pp. 791-792.) The court held that "Even if the reason for reassignment of a supervisor is inaccurate or incomplete, however, the reassignment itself is still valid . . . and the appropriate remedy is to demand a new and accurate statement of reasons. [Citation.] [Plaintiffs] not having requested another statement of reasons, the determination of this case need not await such a statement." (P. 792.)

Finally, we note that the plaintiffs in *Whisman v. San Francisco Unified Sch. Dist., supra,* 86 Cal.App.3d 782, raised the additional argument that even if they lacked permanent status, they were entitled to the benefit of that portion of Charter section 5.101 which granted supervisory employees the right to renewable four-year contracts. (P. 794.) In response, the court observed that "[Plaintiffs'] logic eludes us," but then went on to hold that the issue could not be raised on appeal because it had not been pleaded or tried in the trial court. (P. 794.)

█ In this appeal, plaintiff's first contention is that the Education Code does not preempt that portion of Charter section 5.101 which granted to administrative and supervisory personnel the right to four-year employment contracts which must be renewed if standards of performance have been adequately achieved and maintained by said employees. She claims that the *Whisman* case is distinguishable, since it dealt with that portion of Charter section 5.101 which pertains to the "permanent" status of administrative and supervisory employees who were appointed to such positions prior to July 1, 1971, and who had successfully completed a three-year period of probation. She asserts that "permanent" status is the equivalent of "tenure," and that since the Education Code clearly prohibits the acquisition of tenure in an administrative or supervisory position, the *Whisman* court correctly held that the "permanent" status provision of Charter section 5.101 conflicted with the Education Code and hence was preempted by it. Here, however, plaintiff reasons that the portion of Charter section 5.101 which deals with renewable four-year contracts for administrative or supervisory personnel is not so preempted because it does not confer tenure upon such employees. Plaintiff argues that "Tenure essentially guarantees a lifetime job, whereas persons such as plaintiff are subject to ongoing evaluation. Plaintiff's contract is subject to renewal *only* of [*sic*] she achieves and maintains standards of performance."

Plaintiff's argument is not persuasive. She characterizes tenure as a "lifetime job," whereas she asserts that the four-year contract provision of Charter section 5.101 subjects an employee to "ongoing evaluation" and guarantees the

renewal of her contract only if her job performance is adequate. However, in fact, certificated employees who have acquired permanent status or tenure under the Education Code must be evaluated for the adequacy of their job performance at least once every two years (Ed. Code, § 44664) and such employees *are* subject to termination for a variety of reasons, including unprofessional conduct, incompetency or evident unfitness for service. (Ed. Code, § 44932, subds. (a), (d), (e).) Thus, tenure is not a guaranteed lifetime job, as plaintiff suggests, but consists only of an employee's right not to be deprived of her job until she has been afforded such procedural due process safeguards as an evidentiary hearing at which her employer must establish cause for the termination of her employment.

The four-year contract provision of Charter section 5.101, whereby an administrative or supervisory employee is given the right to have her contract renewed unless her job performance has been inadequate, cannot realistically be viewed as anything other than a form of tenure and, as such, preempted by sections 44850.1, 44894 and 44895 of the Education Code, which provide that tenure may only be acquired in the position of classroom teacher.

If we were to adopt plaintiff's proposed construction of Charter section 5.101, the result would be nonsensical. Thus, those school district employees whose rights were at issue in the *Whisman* case and who were granted "permanent" status under Charter section 5.101 could have their administrative or supervisory positions terminated by the school district without a hearing and a showing of inadequate job performance, whereas those administrative or supervisory employees, such as plaintiff, who had *not* been accorded permanent status under Charter section 5.101 *would* possess the right not to be discharged without a hearing and a showing of inadequate job performance. Perhaps it was for this reason that the *Whisman* court indicated, with reference to the plaintiffs' belated reliance upon the four-year renewable contract provision of Charter section 5.101, that the logic of this argument eluded the court. (*Whisman* v. *San Francisco Unified Sch. Dist., supra,* 86 Cal.App.3d 782, 794.)

In accordance with the *Whisman* reasoning, we conclude, therefore, that that portion of Charter section 5.101 which grants renewable four-year contracts to administrative or supervisory personnel is in conflict with, and therefore preempted by, the Education Code.

■ Plaintiff also contends that the trial court ought to have allowed her to introduce evidence that she had a legitimate expectation of continued employment as an elementary school principal because of the existence of Charter section 5.101, her good job performance and District's practice of renewing the four-year employment contracts of all elementary school principals whose job

performance was satisfactory. She claims that *Barthuli* v. *Board of Trustees* (1977) 19 Cal.3d 717, 722 [139 Cal.Rptr. 627, 566 P.2d 261], contains language which supports her position and suggests that reliance upon an enactment such as Charter section 5.101 may furnish the basis for an expectation of continued employment.

Her argument is contrary to the reasoning of the *Whisman* case, which expressly held that, since the school system has long been held to be a matter of general concern rather than a municipal affair, "Charter provisions, ordinances and regulations relating to schools are therefore subject to preemption by conflicting general laws . . . [and] no vested right can be acquired pursuant to such charter provisions, ordinances or regulations, for any rights so acquired, are acquired subject to state law." (*Whisman* v. *San Francisco Unified Sch. Dist.*, *supra*, 86 Cal.App.3d 782, 789.)

Plaintiff's reliance upon *Barthuli* v. *Board of Trustees*, *supra*, 19 Cal.3d 717, 722, is entirely misplaced. The *Barthuli* court held that the petitioner in that case, who had been removed from his administrative position with defendant school district, had tenure only as a classroom teacher and not as an administrator. (Pp. 722-723.) Although the *Barthuli* court did allude to the fact that a legitimate expectation of continued employment might arise from a source such as "state law" (p. 722), it is evident that a state law is totally dissimilar from a local charter provision which was at all times subject to preemption by state laws. The *Barthuli* case is in no way inconsistent with the *Whisman* holding. In fact, the *Whisman* court cited the *Barthuli* case in reaching the conclusion that the plaintiffs in *Whisman* had no property interest nor vested right in their supervisory positions with the school district. (*Whisman* v. *San Francisco Unified Sch. Dist.*, *supra*, 86 Cal.App.3d 782, 790-791.)

Once her reliance upon Charter section 5.101 is removed from consideration, as it clearly must be, plaintiff's alleged expectation of continued employment as a principal is based solely upon the fact that she had a good record as a principal and that District habitually renewed the employment contracts of principals who had performed their jobs satisfactorily.

Plaintiff cites no authority, and we are aware of none, for the proposition that an employer who has treated its employees in a particular manner for a number of years thereby becomes obligated to adhere to such behavior in the future. In any event, the *Whisman* decision made it clear that a school district's right to reassign its administrative or supervisory personnel to different positions is extremely broad and subject to only two limitations: that the reassignment be reasonable and that the reassigned position be within the scope of the certificate under which tenure was acquired or the work assigned be of a rank and grade equivalent to the position in which tenure was acquired. (*Whisman* v. *San Fran-*

cisco Unified Sch. Dist., supra, 86 Cal.App.3d 782, 791.) In this instance, plaintiff was reassigned to the position of classroom teacher, the only position in which she had tenure, and the making of such reassignment cannot be held unreasonable merely because it constituted a deviation from District's habitual behavior toward its supervisory personnel.

Plaintiff contends that the trial court should at least have permitted her to introduce evidence that her demotion to the position of classroom teacher was arbitrary and capricious and hence unreasonable. She insists that the court ought to have admitted her proffered evidence that the financial problems of District could not have been the true reason for her reassignment because District did renew the employment contracts of certain other elementary school principals and also promoted various other individuals to the position of elementary school principal. She claims that the court's error in excluding this evidence was compounded by its allegedly improper conduct in considering a declaration by defendant superintendent of schools to the effect that he had recommended that plaintiff and several other elementary school principals be reassigned to classroom teaching positions due to a drastic reduction in the financial resources of defendant school district and the closing of approximately 30 elementary schools. Plaintiff asserts that this declaration was never introduced into evidence but was routinely filed with the clerk of the court. She points out that her trial counsel objected to the court's considering the declaration since her counsel had no opportunity to cross-examine the declarant. Plaintiff contends that the trial court nevertheless did take the declaration into consideration and, in its findings, alluded to defendant superintendent's explanation of the school district's reasons for reassigning plaintiff to the position of classroom teacher.

Again, the Whisman case would appear to be directly on point. There, plaintiffs similarly argued that there had not truly been a "reduction of services," as claimed by the defendant school district, since other individuals had been appointed to the supervisory positions previously held by the plaintiffs. (Whisman v. San Francisco Unified Sch. Dist., supra, 86 Cal.App.3d 782, 792.) The Whisman court rejected this argument and held that if the reason given for the reassignment of supervisory personnel was inaccurate or incomplete, the reassignment itself was still valid and the plaintiffs' only remedy was to demand a new and accurate statement of reasons, which they had failed to do. (Ibid.)

In this instance, plaintiff requested a statement of reasons when District first advised her of the recommendation that her contract as principal not be renewed. She was then told that the recommendation was based upon the anticipated financial condition of the District. When she was subsequently advised that she had in fact been assigned to the position of classroom teacher, she was again told that she could request a written statement of the reasons for such

reassignment. She never did so, hence it follows that, like the plaintiffs in the *Whisman* case, she is in no position to challenge the validity of her reassignment on the ground that District gave an inaccurate or incomplete reason for making such reassignment.

Finally, we turn to the trial court's alleged error in considering the declaration by defendant superintendent of schools. As we have already concluded, the trial court was correct in rejecting plaintiff's various offers of proof, since the evidence proffered by plaintiff would not have established that defendants acted improperly in reassigning her to the position of classroom teacher. Such being the case, it is apparent that plaintiff could not establish a cause of action against defendants, hence it follows that any error in the court's consideration of the superintendent's declaration must be deemed harmless. Even in the absence of such error, the court could only have rendered judgment in favor of defendants.

The judgment is affirmed.

Miller, J., and Sims, J.,* concurred.

A petition for a rehearing was denied March 2, 1983, and appellant's petition for a hearing by the Supreme Court was denied March 29, 1983. Grodin, J., did not participate therein.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.